Good morning, Your Honors. My name is Ethan Ballow, and I represent Mr. Lemus. I'm joined today at council table by my associate, Nara Seguino, on the briefs, and also by Mr. Brown, who represents Mr. Almendarez-Martinez. With the time allotted to me, I'm going to address the first three issues presented in the consolidated opening brief. And if there's time, I'd like to dedicate, if possible, a minute or two to Mr. Lemus's sentencing issue. Absent questions from the panel will submit the restitution question on the papers. And Mr. Brown, with the five minutes he's allowed, will argue his client's individual Rule 29. And I'm sure that's hard, and you take me over. I'll ask you, Judge Ward, to give us some dispensation on the back end. So with that, let me begin. The primary question presented in this case is, does Section 880 prescribe the knowing receipt of extortion proceeds as appellants contend, or does it reach the unknowing receipt of extortion proceeds as the government maintains? And before getting into the statute, I thought I'd present a And so in this case, we take the facts of this case. We know Lemus and Martinez live together. They make a pickup at one of the Walmarts or the Target of the Lowe's. And on this occasion, Mr. Martinez is the one tasked with mailing the majority of those proceeds or wiring the majority of those proceeds to the bosses in Mexico. On this occasion, Mr. Martinez stops at a bar. He wants to watch a sports game. And while he's there, he decides he doesn't want to work anymore that day. And he sees a friend. And he says, can you wire this money to me to Mexico? I'll give you the information. I'll give you the money. We know each other. We trust each other. And the friend says, well, what's the money from? And Martinez says, cockfighting. My bird crushed it last night. And I'm sending the money to my cousin, who trained me and taught me how to fight cockfighting birds. And it's only fair that I give him his portion. So that's the question, then, is if the government is correct, that friend is now guilty of receiving extortion proceeds because he knows the money is from an unlawful source. And the government's verbiage, unlawfully obtained, cockfighting is plainly illegal in our state. And the money is actually the extortion, the kidnapping proceeds because they picked up from the store from a victim. And so we say the government's verbiage is incorrect for a few reasons. One, we're going to begin like we always do with the plain text. And the plain text, as we know from how to interpret it, is it starts with an actus reus clause. The money who receives, possesses, conceals, or disposes of any money from one of six of nine predicate offenses under Title 41. It says under this chapter, which is Chapter 41. But there's nine threat statutes or extortion statutes. And six qualify as a predicate. And then there's the mens rea, knowing the same to have been lawfully obtained. It's one phrase, nothing separated by commas. And so what Rehave teaches and what Florence Figueroa teaches is that the mens rea of knowing, it affects every other element of the crime. And there's only one other element here, that one actus reus. So the way you read it is, knowing the same to be lawfully obtained, it modifies the money. So you have to know it's extortion proceeds. And that makes sense. And the reason it makes sense is because that's what the aim of the statute is. And that's why Rehave and Florence Figueroa teach that. That's what makes this crime. As we know from my friend at the bar example, that guy, even though he actually possesses proceeds of kidnapping, doesn't know that. And the government wasn't required to prove that our clients knew that. The second reason, and I'll just note that this case was tried before John Walter, a very experienced judge. And his very first question out of the gate was, he identified the same issue we identified. How are you going to prove they knew? And the government, without a case, said we don't have to prove it. And so we contend the government decouples it. And we're the same Congress enacted two other statutes, 1201. Before you get there, so under your reading then, I don't understand what having been lawfully, unlawfully obtained does then. Well, right. It's superfluous. Oh, I'm going to take on superfluity in surplusage argument with Shin, but let me use this, the other statutes, which use the same language. I think the answer to your question, the answer to your question is on page 14 of our brief. The same Congress enacts 1202. But those other cases, you cited no other cases showing that that's the meaning of those statutes. You just show that there's other statutes that have parallel construction. Thomas is a case that examines 2114B and says I have the correct one. So I would respect which one is that one? Thomas 11th Circuit case we cited in our brief. And it gives a postal robbery. But just give me the textual analysis of what unlawfully obtained does. Well, our position is it means the same thing as receiving ransom proceeds. And the reason we say that is if you look at it, it means the same thing as knowing receiving ransom proceeds. It's a natural read of the statute. So you're saying it twice, essentially. No, I think it's a natural read. What Shin teaches, and this is court two years ago, is the canon against surplusage is not absolute. This is Shin. And that we look as a natural reading and the natural reading means the same thing. And again, I want to look at 1201 A and B. In the federal statute, this is the one that criminalizes, excuse me, the ransom proceeds. And under federal law, the 1202 A says, knowledge that the proceeds were received. Let me give you the exact language. If I may, Your Honor, I'll have it right here. So 1202 A, it's ransom money, says the mens rea is knowing the same to be money or property which has been at any time delivered as such ransom of award. So why didn't Congress say instead of unlawfully obtained, say knowing the same to have been obtained through extortion? Well, let's take a look at 1202. That's what they said. Your suggestion, Judge Bumate's suggestion is exactly what Congress did for 1202 A, for the federal analog. In 1202 B, they reached the same conduct of ransom money, but this is a violation of state law. And this time, Congress in the same statute says, the mens rea is knowing the proceeds to have been unlawfully obtained, which is essentially the same language. Knowing the same to be lawfully obtained is knowing the proceeds to have been unlawfully obtained. So the question is when we look at the same statute passed by the same Congress, that suggests strongly that Congress interpreted these mens rea, these statements exactly the same. I don't know if that's true, but- Well, then- As a statutory matter, I mean, were they part of the same bill or were they- Same Congress, same time. No, but the same bill or different times in the same Congress? I mean- Same Congress, so enacted at the same date by the same Congress, which means we have an obligation to harmonize. But if I'm wrong and you say, not necessarily, I get that, rational basis of why in 1202 Congress wants to punish for rants of federal law, we have a higher mens rea to get 10 years, but for violation of state law, it's a lesser mens rea. And there's no rational reason. It's anomalous. It's incongruous. And because Congress in one statute used two different mens rea to identify the same crime with different predicates, that shows that Congress meant the same thing by this mens rea. Knowing the proceeds to have been lawfully obtained in 1202B means the same thing as knowing the same to be money or property, which has been at any time delivered as such money or ransom. So why did Congress use different language between 1202A and 1202B? Our position, my position is that they, because they, because that same Congress thinks that language achieves the same result. I mean, that seems really odd to say 1202A and 1202B, they use different language. They intended to be the same thing. Well, then the question becomes again, and this is for your honor to resolve, why, what's the difference in the statute? What's the rational basis, very low level, to differentiate between 1202A and 1202B? We contend it's irrational. There is zero rational basis. I'll stand to be corrected by my colleague who still hasn't addressed the related statutes passed by the same Congress. But isn't it equally irrational to use two different languages to mean the same thing when they're right next to each other? No, I think that actually conforms with my argument that they mean the same thing. That Congress is actually, believes it's achieving the same result through somewhat different language. And the language has to attain its goal. Also, for the textual analysis, your honor, it has to modify, knowingly applies to the entire clause. So you have to know the same to have been lawfully obtained. It's irrational to punish someone. Again, this is the friend at the bar. Under that reading, the friend at the bar is guilty. He doesn't know anything about kidnapping. He doesn't know anything about smuggling. He knows nothing. He knows this is cockfighting money. It's an unlawful source. In fact, the money is unconnected. And we look at the example the court used in Flores Figueroa. What the court said is you can't knowingly possess drugs if someone gives you a bag that doesn't have drugs in them, that has drugs in them. If you don't know the drugs are in the bag, you don't knowingly possess drugs, even though you're holding, literally holding the bag. Here, to receive extortion proceeds, you have to know. And what I'd pivot to is. But the statute says knowing the same to have been unlawfully obtained. So the mens rea is you knew it was unlawfully obtained, whatever that unlawfulness might be. But knowing the same, the same is money obtained in violation of one of the six predicate offenses, only six of the nine qualify. So you have to know that under rehave. And they didn't know that. But that goes to this surplusage question of, you know, then makes little sense to say knowing, you know, any money or other property obtained from the commission of any offense to have been unlawfully obtained. Well, what I'd pivot then to suggest to you, take a look at the conspiracy charge, because we know from Collazo it's the same intent. And so to agree to obtain kidnapping proceeds means you must know they're kidnapping proceeds. So the conspiracy count here, Judge Walter said, no, they don't have to know they're kidnapping proceeds. They have to agree to get money. But that's not what conspiracy says to agree. And the indictment alleges they were conspiring with the smugglers. They were agreeing with the smugglers. We're going to lie to these people. We're going to kidnap them. We're going to extort money. So that's what was charged. That's the unlawful agreement. We know it's kidnapping. And then they told the jury, forget that. They don't have to know that at all. And that's a black letter law error. But they have to know that they committed a crime, right? Any crime, municipal crime, dog walking, leash, any crime. This is respectfully when a statute is limited to six predicate offenses saying any violation of any law in the world, regardless of severity, qualifies as unlawfully obtained. That doesn't qualify what I pivot to. Let's say I'm wrong. I mean, why isn't that reason? You know, you talked about rational and Congress acting rational. Why isn't that rational? Congress said, you know, if you deal with illicit money and you think it's for one illicit purpose, you should be on the hook if it's for another illicit purpose. Because that seems rational to me, right? But the statute of receiving extortion proceeds is not a general anti-illicit gains. I don't think that is an anti-illicit funds statute. That's not how I read it naturally. And that's the government's reading. The Congress wanted to do that. They would have definitely been clear about it. But with my time running, this is like the money laundering part of the kidnapping part. I think that's what Congress is trying to stop, right? Well, then it's not money laundering says you have to go to a bank or try to pass it off or hide it or anything.  I don't think that's natural read. But if I'm wrong, let's say you disagree with me, which I see the way the wind's blowing, then it's void for vagueness because Judge Walter said, I don't know what unlawfully obtained means and neither do I. And the statute limits it to six predicates, but that's not fair. And if John Walter doesn't understand the statute, ordinary people like Lemus and Almond Daris, foreign nationals who don't speak English, they don't know it either. And that's not fair notice. Why isn't it not vague to say that it's unlawfully obtained means in violation of any criminal law? Well, it's is that clear? I think the rule of lenity, this is it's when you have a judge, a learned judge saying, I don't understand. I mean, lawyers and judges sometimes overthink things. I think two reasonable person unlawfully obtained is pretty, pretty clear. Right. But the question is, and it was the same. And I think Shin gets this out of that. It's not an absolute thing. It's a very natural read of the statute to have the knowing mens rea apply to the money because what Congress is trying to do is stop people from getting money from extortion. And it doesn't further the statute's gold if the people don't know it's from extortion. Can you address the sentencing part? Because it's the maximum is three years, which is fairly low for federal statutes. I mean, doesn't that suggest, you know, the mens rea requirement here wasn't as high as to require knowledge that was for kidnapping. But 1202 and 1221-14 have the same mens rea and tenure maximum. So Congress is not saying this is a low-level mens rea and we lose low-level mens rea for low-level crimes. There's two tenure crimes passed at the same time. It's just showing that what they believe the money crime here is a lesser crime. It doesn't change the mens rea analysis because the same Congress used the same language in two other statutes, which much higher statutory maxima. So Congress isn't making that differentiation in real time. They use the same language for mens rea for much harsher penalties. Well, I mean, for 1202, it's split, right? 1202-A, clearly higher mens rea. 1202-B, less clear. But both tenure sentences. That's my point. We counter the three years by pointing out two statutes that have tenure maxima with the same language. So it can't be the explanation because the same Congress used it twice. And with my last, I'm not going to argue the Rule 29. That'll rise and fall in your interpretation of statute. The last thing I want to say is, in violation of Gonzalez and black letter law, Judge Walter whacked out Mr. Lemus, stacked his sentences because he didn't accept responsibility. Gonzalez says that's wrong. You can lower a sentence for acceptance of responsibility. You may not punish someone for failing to accept responsibility. On the record, Judge Walter said, I'm punishing him because he did not accept responsibility. He stacked the sentences as a per se black letter violation. At a minimum, the court should vacate Mr. Lemus' sentence and remand to a different judge, considering the vociferousness of Judge Walter's position. I cite this court's decision in Kyle, which says, under such circumstances, vacateur and remand to a different district judge is appropriate. Unless the court wants to follow up with me, I'll let Mr. Brown have a shot. Okay. Thank you. Thank you, Your Honor. Mr. Brown. Good morning, Your Honors. Anthony Brown. I want to take five minutes to try to convince you that, under either standard that you're going to apply for this statute, my client, Junior Almendarez, was not guilty, that there was insufficient evidence to support his convictions. And I'm going to assume we're going to argue under the unlawfully obtained standard. And even under that standard, I mean, there's no evidence that he knew anything about any kidnapping, okay? But even under the unlawfully obtained standard, there were basically only four pieces of evidence that the government brought in. But the court has to consider those in the way that the jury considered them. The court has to think about not only the pieces of evidence in isolation, but the absence of evidence that the government could have had but didn't have in the case. And I want to point you first to the fact that the government claimed that the February 21, 2021 traffic stop, they claim in their brief on page six that the money was picked up from a target earlier that day. There is no evidence at trial about that at all. In fact, the government cites to Lemus's PSR for that piece of evidence in that argument. But there's no evidence at all at trial that that occurred. And so there was no evidence that anything that happened on February 2021 had any connection whatsoever with the kidnapping conspiracy. The second thing, I'm sorry, I thought I had a question. No, okay. So the second thing I want to point out is the government actually put on a witness, an expert on kidnapping and smuggling conspiracies out of Mexicali. And that expert testified that U.S. based partners would be expected to receive communications. Do you mind addressing the Uber ride issue? Yes, the Uber ride issue and like you knew something bad would happen if you got caught with it. Yeah. So that's like, to me, the strongest evidence. That's all right. And I can get a statement. That's for me, the strongest evidence. Okay. But pay attention to the words of the statement. Okay. Now, what I found really interesting about this is that the agent should have known what the elements of the crime were. And he didn't ask, did you think it was unlawfully obtained? Instead, he said, did you think that something bad would happen? At very early on in the trial, the government put on some evidence that explained what would be bad if he got caught with the evidence. And that was the Gardena police officer who testified about the February 2021 stop. What she said was, I had no evidence. I had no reasonable suspicion that these guys had committed a crime at all. And yet I took that 60,000 bucks and kept it. Okay. And so in the context- Is that a pure traffic stop? You don't think that was part of a larger investigation or anything? Maybe. But there was no evidence of it at trial. Because that stop was very odd. That it was a random traffic stop and she finds this money, right? I don't know what the discovery shows in the case. All I can tell you is what's inside the record. And inside the record, no evidence whatsoever that that was connected to a task force or something else. She didn't testify that she had seen them pick the money up from a target earlier that day. No evidence in the record of that. What she did testify to on cross-examination is she had no reasonable suspicion that they were involved in any kind of crime. And yet she took the money and signed a form that said that they were money laundering. Okay. So that tells you, in the context of the evidence in this case, that when Mr. Lemus was talking about what would happen if you got caught with a bag of money in the Uber, that he thought something bad would happen. He thought the money would get stolen again the way it got stolen in February 2021. When you apply the Jackson versus Virginia standard, you have to apply the standard as it's given. You have to look at what a reasonable juror— I mean, that's the point. Like, your inference is plausible. You know, shaky, but plausible. But also other inferences that he knew that this is illegal proceeds. Well, thank you for saying that. Because what I'm trying to tell you is that you have to think about what a rational juror in the position of one of the jurors in this case would rationally come to a conclusion of. And we give all inferences in favor of the government. You have two plausible explanations for what would happen. That's reasonable doubt. Could that juror, beyond a reasonable doubt— Sufficiency of evidence. We give all inferences in favor of the government. No, but why would you give an inference in favor of the government when you have a government witness who testified on cross-examination— Because that's a jury function. That she stole the money. The jury decides the facts. These are two reasonable inferences that can be drawn from the same evidence. That's reasonable doubt. The juror has to find the evidence beyond a reasonable doubt. And if you have explanations— And I actually think the explanation that I'm offering in the context of this trial, in the context of the evidence that the government put on, is more reasonable than the one that you're drawing, Your Honor. I see I'm out of time. If there's any other questions, I can go on and talk about the money grams, which I think is also an important piece of evidence. Just give me 30 seconds on that. Without any evidence from February 2021 that the money in the car was associated with the kidnappings, there's no evidence at all that the money grams that were sent before April of 2021 had any connection with this crime. That's six money grams, okay? No evidence whatsoever. The second thing that you should notice about the money grams is that the last four of them are not even sent to Mexicali. They're sent to other parts of Mexico, three, and then the last one was sent to Linwood, California. The money grams don't tell you anything at all. In fact, the one that the police saw him send on June 1st was sent to Linwood, California, not Mexicali. So the money gram evidence doesn't really support any connection with this kidnapping ring at all, especially in light of the fact that there are no calls to Mexico, no texts to Mexico, no Facebook messages to Mexico, no call records showing calls to Mexico, no evidence from the house search, no evidence from the ledger that points in any way to Mr. Almendarez's connection to this Mexican kidnapping ring. Thank you, Your Honor. Thank you, counsel. Good morning, and may it please the court. Rajesh Srinivasan for the United States. After being instructed on the elements of Section 880, in accordance with the plain statutory language, and U.S. v. Anderson, the Fifth Circuit decision, a jury convicted the defendants after just two hours of deliberation. And with the exception of the substantive reasonableness argument that Lemus raises, during those proceedings below, the defendants never preserved any of the issues that are now on appeal. Regardless, the district court did not commit any error, let alone plain error, and Lemus's sentence was reasonable. And therefore, the district court's judgment should be affirmed. Unless the court wants me to start elsewhere, I'm going to start with the jury instruction issue. First, this is reviewed for plain error. Although the court has fashioned a question of law exception, it does not apply in this case for two reasons. First, United States v. Greer, intervening Supreme Court decision, made clear that when you don't preserve a jury instruction objection, that error is reviewed for a plain error. And the court's question of law exception cannot be squared with Greer, at least in this context. And second, even the court has acknowledged that for the question of law exception, if the government detrimentally relies on the failure to object, then plain error still applies. And here, the government did rely on the failure to object because they fashioned their proof to meet the element of unlawfully obtained, and not the higher burden. So suppose, setting all that aside, suppose we just want to get the law right on this. Yeah. Make the legal argument on why unlawfully obtained  um, given that it's called receiving the proceeds of the extortion. Um, it just, just go ahead and make the legal argument. Absolutely, Your Honor. Thank you. The Section 880's plain text shows that the government's reading is right. Congress used the words, knowing the same to have been unlawfully obtained. As Judge Bumate pointed out,  And as for the title of the statutory section, titles are not the best interpretive tools, but in this case, it is consistent with the statutory text. This statute only applies to proceeds from, uh, extort, from kidnapping or, uh, similar situations. It's limiting the offenses of the type of proceeds that the statute applies to. That doesn't mean that the defendant needs to know that the proceeds were specifically from a kidnapping, just that the proceeds at issue needed to be from a kidnapping. And Defense Counsel cited Rule, uh, 18 U.S.C. 1202 in support of their argument, but that statute actually supports the government's argument. If I read the legislative history correctly, Section 880 and 1202B were enacted at the same time, and you can see that at Public Law 103-322, uh, 108 Stat 2115. And in both statutes, Congress used the term unlawfully obtained. Yet in 1202A, they used a more specific mens rea. That difference in language shows that those two things cannot mean the same thing. Uh, can you address your opposing counsel's point that saying you have to know, you have to have knowledge that's from ransom, that 1202B doesn't, uses language similar to 880, um, but 1202A and B have the same 10-year, uh, statutory, uh, sentence. So, you know, how do you reconcile all of that? Uh, my first response is we defer to the words of Congress, but it is actually consistent that both have the same punishment. And here's why. 1202B uses as predicate state offenses. And state offenses can be, can run the gamut in this category. And some could be more serious, and some could be less serious. And so what the statutory max being the same does is it gives a district judge flexibility to sentence within that 10-year statutory maximum. It doesn't mean that someone who's guilty of 1202A will receive the same sentence as someone who's guilty of 1202B. It could very well be that in a case, uh, where there was very little knowledge, and it was the cockfighting example that my colleague gave, that the sentence would be quite low under 1202B. And in contrast, if under 1202B, the defendant knew about all of the details of the kidnapping, uh, helped plan it, then a higher sentence would be, uh, more appropriate. So what that statutory maximum being the same does is just give the district judge flexibility on how to sentence different defendants. So, so you agree with your, your friend that, that under the hypothetical he presented, that that person at the bar would be guilty of 808, 880? Assuming that that conduct is unlawful, then yes. Cockfighting? Okay. And, and how would you define unlawful? Is it any criminal statute, state or federal? How, how do you, how does the government define unlawful, um, obtain, unlawfully obtain? The government relies on the plain language. I think people know what unlawfully obtain means, and that means not from a legal source. Any proceeds from a crime would not be from a legal source. So... What about in civil violations? Would that count? That's a tougher question. I don't want to commit to an answer without thoroughly considering it, but that's certainly a lot closer of a call, given the purpose of the statute. So I would say criminal laws are definitely within the scope of the statute. Civil laws may not be. It's certainly a tougher question. And criminal laws, misdemeanors, any felonies, any criminal statute? Yes, and that makes sense, given what Congress's goals here were. They wanted to punish people who were doing an essential role in kidnapping schemes. Not as much as the people actually doing the kidnapping, but up to a three-year statutory maximum. And it doesn't matter whether that person knows the intimate details of the scheme or just knows what they're doing is illegal. Congress wanted to stop people from aiding kidnapping schemes in this way. So what if an act could be potentially subject to both criminal and civil laws? Maybe going off on your opposing counsel's hypothetical, cockfighting. Actually, maybe a lot of people actually really don't like cockfighting and maybe would say that's just, but let's use a hypothetical that's even more extreme. Say a leader of a kidnapping ring uses money and likes to buy luxury goods. So he's going around wearing product clothes and he hires some couriers and says, puts $60,000 in a Birkin bag and says, I'm making all this money from counterfeit goods. Instead of charging $20,000 for this bag, I sell it to people for a hundred bucks. So I got all this money. It says, hey, can you deliver this to my friend? The person probably knows it's unlawfully obtained. It's illegal to have counterfeit goods, not particularly serious. I assume it could be subject to both criminal and civil laws. I mean, would that person still be subject under 880? Again, assuming that that conduct were criminalized, the counterfeiting conduct were criminalized, then yes, that person would be subject to punishment under section 880. Now there's prosecutorial discretion. The government may not prosecute that person if they were a more innocent actor. There's also sentencing discretion. That person may not receive any prison time, may receive only probation, may receive a different kind of plea to a misdemeanor. There are a lot of options, but that person would still be guilty of violating the plain text of section 880. I also wanted to address my colleague's point about Rahafe. My colleague claims that Rahafe stands for the principle that a mens rea applies to all elements in the offense. That's not correct. That is a misstatement of what Rahafe says. What Rahafe actually says is that mens rea applies to all subsequently listed elements. So knowingly applies to all subsequently listed elements. And you can see that on page 2196 of the court's decision, where the court says, as a matter of ordinary English grammar, we normally read statutory term knowingly as applying to all the subsequently listed elements of the crime. But here, the elements that my colleagues want to have knowingly apply to come before the knowing term. What comes after the knowing term is the same to have been unlawfully obtained. So that's the relevant terminology that the knowing mens rea applies to. It's not all of the elements in the offense. Finally, if this court is inclined to apply the plain error exception, we would contend that there's neither an effect on substantial rights or fairness or reputation of proceedings in this case. So reversal will be inappropriate, even if the court disagreed with our plain text argument, and even if the court disagreed with the Fifth Circuit's decision in United States v. Anderson. Unless the- Yeah, can I ask a question about the restitution, unless anyone has any other questions? I have another. I have a question. Go ahead, go ahead. So on the restitution, the Ledger question is troubling to me. So I think it was Lopez was charged with $53,000, but he only testified to a loss of $30,000 at trial. And my understanding is the government just added up what the Ledger said that day and said that that's all attributed to the Lopez, that victim. Is that correct? And how is that proper? So the probation office added up all of the things on the Ledger for that day, and no one objected to the PSR, which attributed the full amount of that loss as restitution to the victim. But the government would concede that that victim is only owed $30,000 of restitution, and that a limited remand would be appropriate in this case to correct that error. We agree with the defendants that that is the amount that was testified to by the victim. And that other amount might have referred to ransom proceeds picked up from somewhere else that day, or it might've been intended loss, but it should not be restitution. Okay, thank you. And so you're not arguing a harmless error or anything like that then? We're not arguing a harmless error, but we would ask the court to do a limited remand. We don't think that an entirely new sentencing proceeding would be appropriate in this case. Thank you. Yeah, and my question is as to Mr. Brown's argument as to the sufficiency of the evidence for Lemos. What was the evidence that he knew that the proceeds, the money was unlawfully obtained? There are several things. The first, and Judge Wardlaw, you identified this as the best evidence, is his interview where he says, I knew something bad would happen if I were caught with this money. But it's more than that. For example, there were occasions where Mr. Almendarez took Ubers separately from his co-conspirators to the same place. So they would drive in one car, and he would be in an Uber. No reasonable person could think of any reason for doing that other than that they're involved in something shady, something unlawful. And as was testified by the agents at trial, the agents suspect that their purpose for doing this was to avoid law enforcement detection because they had been pulled over in February and they wanted to separate the money and the people who were meeting the victims in the stores. So it would be harder to pick up that money for law enforcement. In addition to that evidence, the jury was entitled to rely on circumstantial evidence as much as direct evidence. And the circumstantial evidence in this case was quite strong. We know that Mr. Almendarez frequently interacted with his co-conspirators, Mr. Lemus and Mr. Martinez. We know that he at least once went into a Lowe's looking for a victim. Presumably, he received some instruction on what he was doing there, who he was looking for. He had knowledge that they were meeting victims in stores surreptitiously. And again, someone would not think that they would have to do that if what they were doing were lawful. And finally, there were the frequent MoneyGram transfers that show amounts that would be consistent with illegal activity. It would be odd at minimum to not ask questions about where the money was coming from in these amounts. For example, a $60,000 that he was pulled over with with his co-conspirators in February. And the district court did give a deliberate ignorance instruction and the defendants did not object to that instruction and they don't argue about it on appeal. So at minimum, Mr. Almendarez was deliberately ignorant for this element. But it's also important to remember that as Judge Bumate pointed out, that we look at all of the facts in the light most favorable to the government. I know my colleague pointed out a possible innocent explanation for Mr. Almendarez's actions, but this court held in United States v. Nevels an en banc decision that where there's an innocent explanation and an explanation that points to guilt, on sufficiency review, you adopt the one that points to guilt. And then finally, the consecutive sentence as to Lemos, the 78-month upward variance, was that simply a punishment for not accepting responsibility? It was not, Your Honor. And my colleague is both wrong on the law and the facts about this. He's wrong on the facts because at 1 ER 37 to 38, Judge Walter specifically says that the defendant has a right to go to trial and he's not punishing him from going to trial. But Mr. Lemos did allocute and he did not take any responsibility for his actions. He said he wanted to get back to his family as soon as possible. And he said he knew nothing. And the statement, I knew nothing about what was going on is not plausible in light of his repeated interactions with victims, in light of the length of time that he spent in this conspiracy, as well as the other evidence that the government presented at trial. In addition, the law of this circuit is that the courts can consider acceptance of responsibility and remorse when deciding a sentence. And I would point the court to Hull at 792 F 2nd 941, Malquist 791 F 2nd at 1399 and McKee 752 Federal Appendix 462. I acknowledge that's unpublished, but it is analogous to this case. Finally, the defendants waived this acceptance of responsibility argument. They did not present it in their opening brief. Their opening brief contention was that Judge Walter found that he was inside of the kidnapping ring and that's why he got a higher sentence. And by raising in reply, Mr. Lemus has waived this particular argument. Even otherwise, there was no abuse of discretion. It was certainly plausible, if not highly likely, that Mr. Lemus knew about the extent of the kidnappings given the length of time he spent in the scheme, given his trips down to Mexico, where presumably he was interacting with the kidnappers. So in light of those facts, the district court did not err in burying upward for that reason as well. Yeah, the district court seemed to rely on the fact that he thought there was overwhelming evidence that Mr. Lemus understood the kidnapping aspect of the scheme that he was involved in. What was that evidence? The best evidence I can point to is the evidence from the victim, A.C., who asked Mr. Lemus, where's my wife? That's not a question you would ask someone if you knew where your wife was going to be, if she weren't being held in a place where you couldn't find her. So that alone should have tipped him off to the kidnapping aspect of the scheme. That's the best evidence. But there are other circumstantial evidence, his frequent trips down to Mexico, his other interactions with victims, where even though mask mandates were in place, certainly you could see fear in the eyes of the people you're interacting with. And the victims testified about their fear when going to these stores to give the ransom money. So given those facts, Mr. Lemus certainly should have known, at least was deliberately trying to put his head in the sand about the kidnapping aspect if after all of these interactions he did not surmise it for himself. Any further questions? Okay, thank you very much, counsel. Okay, Mr. Bell, I'll give you a couple minutes. Thank you. I'll be brief. I appreciate the time. I'd like to make four quick rebuttal points, if I may, and then I'll sit down. One, I want to answer Judge Lee's question. 1202A, which has the specific language, was passed in 1948. This is, I'm going to recite this on page 28 of the opening brief. 1202B, 880, and 2114B, which have the substantially similar language, were all passed, same act, same bill. It's the Violent Crime Control and Law Enforcement Act of 1994. So then the question becomes, when they were making those statutes using this language, what did Congress intend? And I think the argument I've made before, I maintain that argument. The second thing I would like to say to your honors is, I think it was Judge Lee again, you asked my friend, does unlawfully obtained attach to anything, including misdemeanors? And the government said, of course it does. It would attach to infractions. It would attach potentially to civil cases. And the problem with that is, it proves the incongruity. The statute, even for the predicate, says the money has to come from one of these six felonies. That's a felony. It has to have more than a year. But then you're going to punish the person to felony conduct if they believe the unlawful conduct came from misdemeanor or an infraction. That's anomalous. That doesn't make sense. I got the money for helping people violate leash laws or whatever. That, as long as the money's from the case, as long as we get back to my friend at the bar example, it doesn't matter how low level they believe it is, which will make me pivot to Rahif. Again, the government cites 1296. What Rahif says is, the men's right applies to any crucial element. And here, the crucial element is the receipt of the money from one of the predicate facts. So knowing attaches to that. And read Rehave closely. It supports our textual analysis. The last thing I'll say is, the government says in our opening brief we did not raise the failure to accept responsibility question. Page 62, coming to 63, cites that very evidence. And then the government said we didn't show abuse of discretion because they're saying it wasn't illogical. So we cited the other prong of the abuse of discussion in rebuttal, saying no, it's a clear error of law under Goodwin, under Gonzalez, which they still haven't answered, which says you can't punish people. And for the quote for you, you asked Judge Wardlaw, did the judge do this? Am I right? Here's what the judge said. I do and did consider his failure to accept responsibility and his continual denial that he understood the kidnapping aspect of the scheme that he was involved in as a very important sentencing factor before we stacked. We're saying that he considered it, he punished him for it, and this he may not do. He could lower the view, accept responsibility, but you cannot consider someone's decision to go to trial to up their sentence. And I'm very concerned that my colleagues at the Central District of California don't understand this distinction. And Judge Walter made a mistake in the moment, but I would expect prosecutors to know you can't punish people extra for going to trial. Whatever trial tax may exist, because you don't get the reduction of acceptance responsibility, you can't go up the ladder and stack sentences for that same reason. In the absence of further questions, I'll thank the court for its graciousness with time. All right. Thank you very much, counsel. U.S. v. Lemus is submitted and this session of the court is adjourned for today. All rise. This court for this session stands adjourned.
judges: WARDLAW, LEE, BUMATAY